EPPS *et al. v.* HEARD.

No. 6821. MAY 22, 1929.

*F. P. Longley* and *M. U. Mooty,* for plaintiffs.
*J. T. Thomasson,* for defendant.

BECK, P. J. Julia Epps, Sarah Gibson, and others, alleging that they were children of Profit Heard, and descendants of children who were named in a certain deed of conveyance from Profit Heard to his wife and children, brought a petition against Profit Heard for a partition of the land alleged to have been conveyed, and for other relief. The defendant filed his plea and answer

denying that the plaintiffs had any interest in the land, denying that he executed a deed conveying the property to them, but admitting there was an alleged deed which had been placed of record in Troup County, but averring that he did not authorize the record, and that there had never been any delivery of the deed to any of the plaintiffs. He further alleged in his answer that he was an ignorant colored man at the date of the alleged deed, July 17, 1895, and could neither read nor write; that he had purchased the premises involved in this case from Felix Anderson; that in order to buy the same he had obtained a loan from J. A. Broome; that after he had finished repaying this loan Broome told him that he (Broome) "had fixed the property so that no one could ever get it away from" defendant; that he was then told by Broome to make his mark on a blank piece of paper, and, having confidence in Broome, he did so; that Broome later wrote the deed in question and put it on record without his consent or authority; that he never consented for any one to write such a deed, nor had he given any one authority to place it on record; that one day on the street Broome told him to go by the office of the clerk of the superior court and get the paper, which he did, but before paying for the recording he asked the clerk what it was and what it meant, and he was then told for the first time that it was a deed conveying his interest to his wife and children; that thereupon he repudiated it and renounced his intention of making such an instrument, but was told by the clerk to carry it home and not give it to his wife, but to put it into his trunk, which he did; that he had never delivered it to his wife or to any of his children, nor did he ever deliver it to any one; that his wife died in the year 1905, without knowing of such a deed; and that he had never told any of his children of the existence of such a paper. He denied that it was ever his intention to sign such a paper.

At the trial, after both sides had introduced evidence, a motion was made that a verdict be directed for the defendant, on the ground that "there had been no delivery shown of the deed in question to any of the grantees." This motion was sustained by the court, and the plaintiffs excepted.

It will be seen from the foregoing statement that the sole question for decision is whether, under the evidence introduced by the plaintiffs and the defendant, a jury would have been authorized to

find a verdict in favor of the plaintiffs; for if there was any evidence authorizing a verdict in their favor, the court should not have directed a verdict, but should have submitted the issues made to the jury for their determination. After carefully going through the evidence in the record, we are unable to agree with the court in its conclusion that there was no evidence which made an issue of fact for the jury to try. While there are circumstances in the case strongly tending to support the contentions of the defendant, —the fact that he continued for many years to occupy the premises alleged to have been conveyed, and to pay taxes upon the property, while he retained the deed for many years and made expensive improvements upon the premises at his own cost, and while certain of the children named as grantees in the deed grew up from childhood to the age of 35 or 40 years without asserting title to this land; and while there are other circumstances tending strongly to corroborate the testimony of the defendant to the effect that he had never executed such a deed as that in question, there were other circumstances which the jury had a right to consider and to say what was their probative value. Without attempting to enumerate all those circumstances we here mention some of them: The deed itself was not introduced in evidence, but a copy of the same from the record. The defendant apparently subscribed the deed. In his testimony he said he made his mark. This is not apparent on the record. He knew the deed had been recorded, and went to the clerk of the superior court and received the paper and carried it home. There is some evidence to show that at one time this deed was in the hands of one of the grantees. There is the evidence of two or three witnesses that he stated that the property in question was the property of his children. While the defendant said he could neither read nor write in the year 1895, at the date of the execution of the deed, there is evidence from which the jury could have found that this was not true; for there is evidence that thereafter he was able to read and write. This he explains by saying that he learned afterwards to read and write. So it is for the jury to say whether the statement made by him was true or not. There is direct evidence that in the year 1896 he could write. Because of these and other facts in the case it was a question for the jury to say whether or not there had been a delivery of the deed. The fact of its record raises the presumption of its delivery, where

it appears to have been executed regularly, with one official attesting witness. Of course, if the jury should believe from the evidence that he did not execute the deed, but that he merely made his mark on a blank piece of paper and a deed of conveyance was fraudulently written above the signature, the record of such a paper would raise no presumption of delivery. But a court could not say that the version given by the defendant as to the transaction is true. His children were minors at the time of the execution of the deed, and the jury would have the right to say, under the instructions of the court, whether this fact explains the non-delivery of the deed, if it was ever executed. Of course, delivery is essential to the validity of a deed conveying real property, and the instrument is valid as a conveyance only after its delivery. "A proper and legal registry of an instrument raises a presumption of delivery, sufficient to establish the fact, unless rebutted. An unauthorized registry raises no such presumption, and in that case the validity of the instrument is not established until delivery is affirmatively shown." *Stallings* v. *Newton,* 110 *Ga.* 875 (36 S. E. 227). But the jury should have been left to decide whether, under the facts of this case, the defendant executed and delivered the deed in question; and that being true, the judgment of the court below must be　　　　　*Reversed. All the Justices concur.*